UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
LEXINGTON

| KEVIN WILSON, | ) | |
|---|---|---|
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 5:18-CV-612-REW |
| | ) | |
| ERIN ADCOCK and AMY SHELTON, | ) | |
| individually, as Attorneys-in-Fact in | ) | OPINION & ORDER |
| connection with the Edward C. Wilson | ) | |
| and Jane L., Wilson Revocable Trust, and | ) | |
| as Co-Trustees of the Jane L. Wilson | ) | |
| Revocable Trust and the Wilson Family | ) | |
| Dynasty Trust, | ) | |
| | ) | |
| Defendants. | ) | |

\*\*\* \*\*\* \*\*\* \*\*\*

The Court confronts a dispute over family and money. Plaintiff Wilson, one of seven children of the late Edward and Jane Wilson, sues two siblings (Erin Adcock and Amy Shelton) over alleged impropriety in their handling of entrusted family funds.

Per the Complaint and its attachments, three trusts pertain: a 1995 Trust (as amended and restated), a 2014 Revocable Trust, and a 2014 Family Dynasty Trust.[1] Adcock and Shelton, the Complaint alleges, improperly used a durable power of attorney (granted by Jane Wilson) to siphon assets from the 1995 Trust, in the period between 2010 and 2014. Then, as Co-Trustees under the two 2014 Trusts, Adcock and Shelton allegedly continued to make improper transfers and then defrauded Plaintiff, or tried to do so, with respect to his rights. Plaintiff Wilson sues alone, but he

---

[1] Short-hand titles, for ease of reference.

purports to represent, functionally at least, the interests of all Trust beneficiaries. The Complaint is the only pleading, at this stage, and the Court accepts its well-pleaded allegations as true.[2]

The Complaint has some omissions of interest to the Court. Although Plaintiff seeks to redress wrongs and claw back monies misspent under the 1995 Trust, DE 1 ¶ 30-33, Plaintiff did not name that Trust itself as a party. Plaintiff also did not name the 2014 Trusts, even though the Complaint targets Trust management and seeks to depose the Trustees and augment the Trust's (or Trusts') corpus/corpora. *Id*. at Prayer (g), (i). No one has complained about that structural omission, and presumably naming the Trustees is enough to deal with trust mechanics and powers. Further, the Complaint generally identifies Trust beneficiaries but does not name the current roster. Thus, although Plaintiff purports to act for the benefit of the full non-party beneficiary roster (to include replenishing the Trusts and changing trustees), the pleading does not provide current information about the roster, which is a concern.

The pending motion addresses failure to join.[3] Defendants (who are co-Trustees and also beneficiaries) argue that all beneficiaries should be part of the suit. They seek relief under Rule 19, ultimately arguing for dismissal under the Rule 19(a)/(b) sequential rubric.[4] The matter is fully

---

[2] When considering a 12(b)(7) motion, the Court may consider "affidavits and other proofs" beyond the Complaint. *See Estes v. Shell Oil Co.*, 234 F.2d 847, 852 (5th Cir. 1956); *see also 16th & K Hotel, LP v. Com. Land Title Ins. Co.*, 276 F.R.D. 8, 12 (D. D. C. 2011) ("In evaluating the need for the absent person under Rule 12(b)(7), the court must accept as true the allegations in the complaint, and may also consider extrinsic evidence submitted by the parties.") (*citing Davis Cos. v. Emerald Casino, Inc.*, 268 F.3d 477, 479 n.2, 480 n.4 (7th Cir.2001)); *Raytheon Co. v. Cont'l Cas. Co.*, 123 F.Supp.2d 22, 32 (D. Mass. 2000)); 5C Fed. Prac. & Proc. Civ. § 1359 (3d ed.) ("The district judge is not limited to the pleadings."); *Lennar Mare Island, LLC v. Steadfast Ins. Co.*, 139 F. Supp. 3d 1141, 1150 (E.D. Cal. 2015)("The inquiry is fact-specific and practical. . . . For this reason, it may be necessary to review evidence beyond the pleadings.") (citations omitted).

[3] Plaintiff should have confronted the issue head-on, per Rule 19(c); the defense has queued up the issue, so no harm done.

[4] Wilson chides the defense for moving under Rule 19, but Rule 12(b)(1) also is not the proper route. The Court does have jurisdiction. Rule 19 addresses whether the Court should force joinder and whether, when such an act would deprive the Court of jurisdiction, the matter should yet

briefed. *See* DE 8, 9, 10, 14. The Court has read the full record, carefully and pragmatically assessing the facts and posture in the case.

The Court notes the breadth of Plaintiff's undertaking, here on diversity jurisdiction. By the Complaint, Wilson seeks accountings under all Trusts. He seeks to recover all misspent (by Defendants) money during the period of the 1995 Trust and similar relief under the 2014 Trusts. Further, Wilson endeavors to hold Adcock and Shelton liable for related fraud and fiduciary duty breaches. Alternative or supplementary theories include conversion and unjust enrichment. The Complaint seeks imposition of a constructive trust (and/or deposit of recovered funds into the 2014 Trusts).

Critically, the Complaint includes the demand for removal of Adcock and Shelton as Trustees, along with the naming of a successor trustee(s). DE 1 ¶ Prayer (g).[5] Finally, it seems Wilson endeavors a personal recovery for punitive damages, aimed at direct behavior toward him (*id.* ¶ 120) but also the general wrongs claimed.

The Court, in this nascent matter, turns to the Rule 19 analysis. The Rule calls for a sequential process. Is the nonparty a "required party"? If so, and joinder is not feasible, should the Court forge ahead or dismiss? *Glancy v. Taubman Centers, Inc.*, 373 F.3d 656, 666 (6th Cir. 2004) (describing three-step sequence under Rule).

**1. The beneficiaries are parties required to be joined if feasible.**

Rule 19(a)(1)(B) provides:

(a) Persons Required to Be Joined if Feasible.

---

proceed only among the existing parties or be dismissed. Rule 12(b)(7) is the vehicle for asserting nonjoinder.

[5] In the briefing, Wilson claims not to be seeking this relief. DE 9, at 12 ("But Plaintiff does not ask the Court to order a successor trustee."). The Complaint expressly and obviously says otherwise. DE 1 at 22 (praying for "An order removing the Defendants as Co-Trustees . . . and appointing a successor trustee or co-trustees"). This conflict in positions is, at best, curious.

3

> (1) Required Party. A person who is subject to service of process and whose joinder will not deprive the court of subject-matter jurisdiction must be joined as a party if:
>
>> (A) in that person's absence, the court cannot accord complete relief among existing parties; or
>>
>> (B) that person claims an interest relating to the subject of the action and is so situated that disposing of the action in the person's absence may:
>>
>>> (i) as a practical matter impair or impede the person's ability to protect the interest; or
>>>
>>> (ii) leave an existing party subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations because of the interest.

Fed. R. Civ. P. 19(a)(1). The beneficiaries all surely claim an interest "relating to the subject of the action." Plaintiffs calls the interest query "irrelevant," DE 9 at 7, but that language and the sub-element come straight from the Rule. Each nonparty beneficiary (a 1/7 Trust claimant) plainly has an interest in the propriety of Trust management, the assessment of relevant POA transfers, and the actions of Adcock and Shelton. The identity and position of the Trustees, a matter directly in issue, impacts one and all. Wilson peppers the Complaint with repeated invocation of the beneficiaries' rights, claims, and interests. As one of many examples, the Conversion count asserts, as to alleged defalcations, "Defendants . . .wrongfully converted funds in which Plaintiff and the Beneficiaries have an interest[.]" DE 1 ¶ 108.

The Court finds that disposing of the action, without the nonparty beneficiaries in the suit, may practically impair or impede the nonparties' ability to protect their interests. Primarily, the Court has pragmatic concerns about the effects on the Trusts' corpora and on Trust management. Part of Plaintiff's claim is to deny Defendants the use of Trust assets in defense of the claims. *Id.* Prayer (e). Certainly, the 2014 Trusts envision Trustee authority with respect to the costs and

expenses of claim defense. *See* DE 1-4 at 6-7[6], §§ 7.1-7.2. ("[T]he Trustee will have the power . . .[t]o compromise, adjust, and settle disputes and claims; to execute receipts and acquittances; and to institute and defend suits or legal proceedings."); § 7.17 (power to retain and pay attorneys); DE 1-5 at 15, §§ 12.1-12.2 (same); § 12.17. If Plaintiff loses, in whole or part, the litigation process could well deplete the Trust (and thus any beneficiary's share). Practically, each beneficiary should have a chance to impact the winnowing litigation in the manner that beneficiary chooses. Further, even more directly, Wilson seeks to remove Adcock and Shelton as fiduciaries. This aim would displace the matriarch's stated choices and put new leadership in place. Every beneficiary's interest would feel (pro or con) impact from such a weighty change. Beneficiary absence would introduce that major event without input from the particular beneficiary. Once done, the nonparty's interest in the outcome necessarily would be practically and actually impaired.

Likewise, proceeding without the beneficiaries may leave Defendants subject to a substantial risk of incurring multiple and/or inconsistent obligations because of the absent interest. Thus, if Wilson wins on, *e.g.*, the punitive damage claim, then an absent beneficiary may pursue independent relief, potentially subjecting the Trustees to a duplicate liability for overlapping wrongful conduct. Again, more pointedly, the Trustees could prevail in this case and still face a removal effort from a nonparty claimant (or the inverse).[7] That could rationally place the Trustees in a situation of inconsistent obligations, with respect to their fiduciary place or authority, court to court. In that scenario, one court could be telling the Trustees to stay when another court tells them they must go. Are these risks substantial? The Court so finds. The record shows significant

---

[6] The Court refers to the CM/ECF pagination.
[7] Presaged by the defense reply and the attached affidavits.

disagreement among the known beneficiary pool. *See* DE 10-1, Exhibit A (Affidavits of Lynn Kelley, Megan Westcott, and Michael Wilson) (all expressing an "interest in and a desire that" the Trustees remain and threatening "counter" litigation to "preserv[e]" the Trustees). This signals to the Court that, particularly given the family dynamics and case scope, strong feelings and litigation results are likely to spawn further litigation.

The Court has carefully read and considered the cited cases. "As a general rule, all beneficiaries are persons needed for just adjudication of an action to remove trustees and require an accounting or restoration of trust assets." *Joseph v. Teitelbaum*, No. 1:10 CV 00931, 2010 WL 11565404, at *3 (N.D. Ohio May 24, 2010) (quoting *Walsh v. Centeio*, 692 F.2d 1239, 1243 (9th Cir. 1982)); *see also Hinsdale v. Farmers Nat. Bank & Tr. Co.*, 93 F.R.D. 662, 665 (N.D. Ohio 1982) (finding an individual's position as a beneficiary "[e]ven more important" than as a co-trustee and that her non-joinder "not only impairs her ability to protect her interests, but also leaves the defendant . . . subject to the risk of incurring double or otherwise inconsistent obligations.") (internal quotations omitted); *Tick v. Cohen*, 787 F.2d 1490, 1494 (11th Cir. 1986) (all beneficiaries are necessary parties to actions seeking broad relief affecting the trust and trust administration); *Carey v. Brown*, 92 U.S. 171, 172 (1875) ("The general rule is, that in suits respecting trust-property, brought either by or against the trustees, the *cestuis que trust* as well as the trustees are necessary parties."); *Faunce v. Bird*, 210 F.R.D. 725, 727–28 (D. Or. 2002) ("The Supreme Court has described necessary parties generally as those persons having an interest in the action who should be made parties so that the court may 'finally determine the entire controversy, and do complete justice, by adjusting all the rights involved in it.'") (quoting *CP Nat. Corp. v. Bonneville Power Admin.*, 928 F.2d 905, 911 (9th Cir. 1991)); *Stevens v. Loomis*, 223 F. Supp. 534, 538–39 (D. Mass. 1963) ("The federal courts have developed the rule that when a beneficiary

6

or legatee sues a trustee or executor who has an adverse interest, all beneficiaries or legatees are indispensable to that action if its object is to benefit not merely a particular beneficiary but the entire corpus."), *aff'd*, 334 F.2d 775 (1st Cir. 1964); Moore's Federal Practice § 19.06[1] at 19-110 (2011) (approving *Walsh* rule). One global adjudication of this controversy would avoid these problems.

**2. Joinder would deprive the Court of jurisdiction. In equity and good conscience, the action should be dismissed.**

Rule 19(b) provides:

> (b) **When Joinder Is Not Feasible.** If a person who is required to be joined if feasible cannot be joined, the court must determine whether, in equity and good conscience, the action should proceed among the existing parties or should be dismissed. The factors for the court to consider include:
>
> (1) the extent to which a judgment rendered in the person's absence might prejudice that person or the existing parties;
>
> (2) the extent to which any prejudice could be lessened or avoided by:
>
> (A) protective provisions in the judgment;
>
> (B) shaping the relief; or
>
> (C) other measures;
>
> (3) whether a judgment rendered in the person's absence would be adequate; and
>
> (4) whether the plaintiff would have an adequate remedy if the action were dismissed for nonjoinder.

Fed. R. Civ. P. 19(b)(1). Taking the Complaint's allegations as true, the Court would anticipate aligning beneficiaries as Plaintiffs. Wilson purports throughout the Complaint to press, adversely to Defendants, matters concerning and rights of all beneficiaries. In the briefing, Plaintiff argued as "true" that "the Non-Party Beneficiaries would be plaintiffs against the Defendants if joined in this litigation because [they] have the same interests against the Defendants as Plaintiff does." DE

9 at 13 n.3. Further, Wilson makes no claim against any beneficiary qua beneficiary. As such, as a matter of rational alignment in a suit alleging the propriety of trust management and/or improper disposition of trust assets, each beneficiary would have the posture and characteristics of a plaintiff.[8] The information of record shows that this would result in incomplete diversity between the plaintiffs and the Trustees, thus divesting the Court of jurisdiction.

Persist or dismiss? The (b) factors non-exclusively guide the inquiry, and the Court has pragmatically considered each listed query. The keys are the depletion effect of litigation and the trustee removal goal. For the first, and as noted, the Court is concerned that litigation among an incomplete roster threatens to deplete the Trust without adequate input or representation of the nonparty beneficiaries. Wilson could wage the war and lose. The nonparties, without a place at the table, then would share the burden and cost of Wilson's loss. Having a direct role in the case mitigates this danger; absence surely hazards prejudice.[9]

More importantly, the Court remains zeroed in on the Trustee removal issue. Again, Wilson seeks to displace Adcock and Shelton. The nonparty beneficiaries may or may not share that goal. A decision without them could lead to echo litigation with a different aim and potentially an incongruous result. Plaintiff himself recognizes the gravity of the topic, noting that a "successor

---

[8] This is not to say that all beneficiaries would see eye to eye on the merits. As the Reply shows, the beneficiaries, at least at this preliminary stage, may not be of one voice. The Court notes that the record does not divulge the citizenship (or merits views) of all beneficiaries. At least two non-party beneficiaries are, as are the Defendants, Kentucky citizens.

[9] Interestingly, the 1995 Trust, also at issue, gives beneficiaries an arbitration right. *See* DE 1-1 at 17 (§ 7.01 Resolution of Conflict provides that "[a]ny controversy between the. . . Trustees and . . . Beneficiaries . . . shall . . . on the written request of either . . . be submitted to arbitration."). Whether that applies or not is unclear, but litigation process choices certainly impact the Trusts and likewise those claiming under the Trusts.

trustee may be objectionable to the absent beneficiaries." DE 9 at 15. Despite expressly seeking a successor and recognizing this distinct and weighty interest, Plaintiff resists the 19(b) calculus.[10]

If Wilson wins and gets his prized removal, the Court views the beneficiaries as required legal players in a proper replacement. This is true under the 2014 Trusts, which provide the mechanism for Trustee replacement, a mechanism almost sure to require direct input from all adult beneficiaries. *See* DE 1-4 at § 6.3(b) (giving replacement right, in context, to "a majority of the current adult beneficiaries"); DE 1-5 at § 11.3(b) (accounting for replacement mechanics and including authorization from "a majority of the current adult income beneficiaries of the Trust"). How could this or any court comply with the Trusts and hear from the adult beneficiaries without having them formally before the Court? A similar requirement likely arises under Kentucky law. KRS § 386B.7-040 addresses filling a trustee vacancy, including one after removal. *Id*. at 1(d). Qualified beneficiaries have a statutory voice, perhaps even a controlling voice, in successorship. *See id*. at 3(b). The point is that, if the case moves to Wilson's desired conclusion without the nonparty beneficiaries present, a successor selection would not account for the beneficiaries'

---

[10] Adequacy of representation, touted by Plaintiff, is a factor worth considering, and Plaintiff cites many cases for the proposition. *See Harvill v. Harvill*, No. 3:12-cv-00807, 2013 WL 1245729, at *11 (M.D. Tenn. Mar. 27, 2013) (finding a non-party beneficiary not a required party where interests in the trust "will be adequately defended" by the existing parties); *Markham v. Fay*, 74 F.3d 1347, 1355 (1st Cir. 1996) (finding, where a non-party beneficiary's interests are represented by existing parties, an exception to the general rule that they be joined); *Marvel Characters, Inc. v. Kirby*, 726 F.3d 119, 134 (2d Cir. 2013) ("[T]he potential prejudice to an absent party under Rule 19(b) is mitigated where a remaining party could champion [his or her] interest.") (internal citations omitted). Each of those cases assessed adequate representation and potential prejudice particular to the specific scenario. In this fact-laden context, the Court is not convinced that any of the parties fully or adequately represents the absent beneficiaries. Although the interests of Plaintiff may theoretically align with some beneficiaries, there is plain reason to doubt universal alignment. Further, on the critical issue of Trustee removal, each beneficiary has rights and say, and each could express those rights differently. No proxy exists to replace an individualized view. Finally, on the depletion or duplicate liability matters, the very fact of absence works the threat of prejudice. The Court finds the cases Plaintiff cites, all of which hinge on discrete details, unpersuasive on these facts.

required input and could result in an invalid or inadequate judgment. This signals a compelling joinder need.

The Court sees no ameliorative measures, protective provisions, or relief shaping to guard against the identified prejudice. On the flip side, Wilson faces little prejudice from dismissal. He picked a forum and initiated the action surely knowing that the party roster would pose problems. The case is only a few months old. Kentucky provides a forum that can ably encompass the entirety of the dispute. *See* Rule 19(b)(4). *Mutchler v. Wilson*, No. 5:15-cv-150-GNS-LLK, 2015 WL 7015326 (W.D. Ky. Nov. 12, 2015) ("The state courts offer a forum in which all parties to this litigation may be present and which more routinely handles probate and trust matters such as those involved here. Indeed, Kentucky courts are the superior forum as this case involves questions of Kentucky trust law.").

For all of these reasons, the Court finds that equity and good conscience direct dismissal of the case under Rule 12(b)(7) and Rule 19(b). Defendants have established the Rule 19 dismissal requisites. The Court **GRANTS** DE 8 and **DISMISSES** the case **WITHOUT PREJUDICE**.

This the 31st day of July, 2019.

Signed By:
*Robert E. Wier*
United States District Judge